# EXHIBIT 7

LEXSEE 1999 U.S. DIST. LEXIS 4170

**KIMBERLY SPIGHT, Plaintiff, v. SAFER FOUNDATION; CROSSROADS COMMUNITY CORRECTION CENTER; THE STATE OF ILLINOIS DEPT. OF CORRECTIONS; DR. HARRY I. SHUMAN, individually and as Medical Director of the Illinois Department of Corrections; MARJORIE L. BROWN, individually and as Deputy Director of the Illinois Department of Corrections Community Service Department; and DAN COUGHLIN, Defendants.**

No. 98 C 4438

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

*1999 U.S. Dist. LEXIS 4170*

March 26, 1999, Decided
March 29, 1999, Docketed

**DISPOSITION:** [*1] Shuman, Brown and DOC's motion to dismiss granted. Coughlin's motion to dismiss granted. Safer Foundation's motion to dismiss granted. Counts I, II, IV, V, VI, VII and VIII dismissed.

**COUNSEL:** For KIMBERLY SPIGHT, plaintiff: Forrest L. Ingram, Julie Ann Boynton, Forrest L. Ingram, P.C., Chicago, IL.

For SAFER FOUNDATION, DAN COUGHLIN, defendants: William James Arendt, Margaret Anne Gisch, Matthew John Cozzi, Field Golan & Swiger, Chicago, IL.

For IL ILLINOIS DEPARTMENT OF CORRECTIONS, THE, MARJORIE L BROWN, defendants: Gary Michael Griffin, Illinois Attorney General's Office, Chicago, IL.

**JUDGES:** REBECCA R. PALLMEYER, United States District Judge.

**OPINION BY:** REBECCA R. PALLMEYER

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Kimberly Spight, who has lupus, worked for Safer Foundation for approximately eleven years, until she was terminated in 1995. Spight now sues Safer for breach of contract, promissory estoppel, violation of the Americans with Disabilities Act, and wrongful discharge. She sues Safer and Dan Coughlin, a Safer employee and her former supervisor, for bad faith breach of contract. Plaintiff did contract work for the Illinois Department of Corrections (DOC) while at Safer, and [*2] she sues Safer and the DOC for intentional infliction of emotional distress. Plaintiff also claims Dr. Harry Shuman of the DOC medical staff, and Marjorie Brown, Deputy Director of the DOC Community Service Department, defamed her. Lastly, Plaintiff sues Safer, the DOC, Dr. Shuman, Brown, Coughlin, and Crossroads Community Correction Center, a division of Safer, for violation of her due process rights. All Defendants move to dismiss under *Rule 12(b)(6)*. For the reasons that follow, Defendants' motions are granted.

**FACTUAL ALLEGATIONS**

The complaint alleges as follows. In 1985, Plaintiff began work with Safer, a nonprofit corporation that does contract work for the DOC. (Compl. PP 2, 8, 9.) Safer's personnel policy and procedures and the rights and responsibilities of employer and employees, including disciplinary procedures, are memorialized in a handbook, (*id.* P I.50), portions of which are attached to the complaint.[1] According to Plaintiff, the handbook promises that Safer will deal fairly with its employees,

and in particular states Safer should "handle[] fairly" any termination of service. (*Id.* PP I.52, I.56.) Safer disseminated the handbook to Plaintiff; [*3] by commencing and continuing employment, Plaintiff feels she accepted the terms of employment offered by Safer in the handbook. (*Id.* PP 54, 55.)

> 1 Ordinarily, on a 12(b)(6) motion the court may not rely on evidence outside the pleadings. However, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993).* Plaintiff attached portions of the handbook to her complaint, and Safer attached the entire document to its brief. The handbook is central to several of Plaintiff's claims, and the court considers it part of the pleadings.

In 1991, DOC began yearly tuberculosis (TB) testing of all employees, including contract employees. (*Id.* P 11.) By 1992, Safer employed Plaintiff as Assistant Chief of Security, and assigned her to a DOC contract. (*Id.* P 9.) That same year Plaintiff was diagnosed with systemic [*4] lupus erythematosus, commonly known as lupus, a disease that attacks and impairs the immune system. (*Id.* P 12.) Her doctors treated her with immunosuppressive drugs, and in 1993 pronounced her in remission. (*Id.* PP 14, 15.) Plaintiff's general physician, Dr. Bruce Huck, prepared a statement for Safer indicating that Plaintiff was free of TB, based on a negative purified protein derivative (PPD) test in May 1995. (*Id.* P 16.) In March 1996, Plaintiff had another negative PPD test, and a chest x-ray indicating she was free of TB. (*Id.* P 17.) In June 1996, the DOC required all employees, including contract employees, to be retested for TB, after an inmate at the facility where Plaintiff was working tested positive for TB. (*Id.* PP 18, 19.) Plaintiff told Safer that her doctor advised her not to take the PPD skin test, because of her lupus treatment, and Dr. Calvin Brown, a lupus specialist, personally informed DOC and Safer medical personnel that the immunosuppressant drugs Plaintiff received make the results of a PPD skin test invalid. (*Id.* PP 20-22.) Dr. Brown told DOC and Safer that the medically acceptable alternative was a chest x-ray. (*Id.* P 23.) The complaint [*5] does not specify the DOC and Safer personnel with whom Dr. Brown communicated.

In August 1996, Plaintiff submitted to Safer a statement from her specialist [2] reiterating that a skin test was not appropriate for her, and that she had a recent chest x-ray which indicated she was TB negative. (*Id.* P 24.) Approximately two weeks later, she submitted medical documentation to this effect to Dr. Harry Shuman, medical director for the DOC. (*Id.* P 25.) Despite Plaintiff's efforts, DOC continued to insist that Safer obtain a TB skin test from her. (*Id.* P 27.) In late August 1996, Safer (again, the complaint does not name names) told Plaintiff that "she was perceived to have TB," and involuntarily reassigned her to the Safer Chicago office. (*Id.* P 29.) Plaintiff believes this decision was made in response to a memorandum, written by DOC Superintendent Jimmy Ellis at the behest of Brown and Shuman, which raised the possibility that Plaintiff had TB, and asked that she be transferred. (*Id.* P 28.) On September 4, 1996, Plaintiff filed charges with the Illinois Department of Human Rights (IDHR) and the Equal Employment Opportunity Commission (EEOC) alleging disability discrimination [*6] by Safer. (*Id.* P 30.)

> 2 The complaint does not make clear whether this specialist was Dr. Brown, or someone else.

Safer continued to request that Plaintiff submit to a TB skin test; on October 1, Plaintiff asked Dr. Huck to prepare a statement for her to present to Safer declaring her TB-free. (*Id.* PP 31, 32.) At Dr. Huck's suggestion, Plaintiff then took a TB skin test [3] on October 1, to avoid further problems with DOC; the results were negative. (*Id.* PP 34, 35.) Plaintiff then reviewed the statement prepared by Dr. Huck, and noticed an error "related to a comment made by [Plaintiff's] mother to Dr. Huck about a TB test that [Plaintiff's] mother believed [Plaintiff] had taken in her childhood." (*Id.* P 37.) The complaint offers no more information about this erroneous information, except that it was "not related to any medical test or examination performed by Dr. Huck." (*Id.* P 38.) Plaintiff deleted the inaccurate information and submitted the statement, which discussed her TB status [*7] and ability to perform her job, to Safer on October 2, 1996. (*Id.* PP 39, 40.) Safer then contacted Dr. Huck and requested medical information about Plaintiff, including a copy of Dr. Huck's original unexpurgated statement, and Dr. Huck obliged. (*Id.* P 41, 42.)

> 3 The court cannot discern from the complaint whether the PPD skin test that Plaintiff's own

doctor administered to her in May 1995, March 1996 and October 1996 was the same test, medically speaking, that she refused to undergo at the request of the DOC and Safer.

On October 8, 1996, Dan Coughlin, one of Plaintiff's supervisors, sent Plaintiff a memorandum alleging that she had falsified a Safer document, and informing her that she was being terminated for "gross misconduct." (*Id.* PP 44, 45.) Plaintiff believes the alleged misconduct was her act of deleting the inaccurate information from Dr. Huck's letter. (*Id.* P 46.) On October 9, she sought to grieve the decision to terminate her, presumably under the provisions of the handbook, and [*8] Safer refused to let her use the grievance procedure because Plaintiff had already filed charges of discrimination with IDHR and the EEOC. (*Id.* PP 4, 48.) Plaintiff amended one of her charges (she does not say which one) to claim retaliatory discharge against Safer. (*Id.* P 30.) On March 25, 1998, the EEOC issued to Plaintiff a right-to-sue notice. (*Id.* P 49.) She filed her complaint on June 17, 1998 in the Circuit Court of Cook County, and Defendants removed to federal court.

## DISCUSSION

Safer only is named in Count I, for breach of contract; Count II, for promissory estoppel; Count III, for violation of the Americans with Disabilities Act (ADA); and Count V, for wrongful discharge. Count IV accuses Safer and Coughlin of bad faith breach of contract, and Count VI alleges that Safer and the DOC intentionally inflicted emotional distress. In Count VII, Plaintiff claims that Defendants Dr. Shuman and Marjorie Brown committed libel and slander *per se* by directing and approving the circulation of a memorandum that suggested Plaintiff "may be spreading the TB virus." (*Id.* PP VII.51-VII.53.) Lastly, in Count VIII, Plaintiff sues Safer, DOC, Dr. Shuman, Brown, [*9] Coughlin, and Crossroads (a division of Safer) for violation of her due process rights.

The DOC defendants (the DOC together with Brown and Shuman), Safer, and Coughlin each filed separate motions to dismiss. In these motions, Defendants challenge the adequacy of every count in the complaint, except for Count III, the ADA claim. The court considers each count in turn, and asks whether Plaintiff can prove any set of facts that would entitle her to relief. *Durr v. Intercounty Title Co., 14 F.3d 1183, 1187 (7th Cir. 1994)* (citing *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)).*

## I. Breach of Contract - Count I

According to Plaintiff, the Safer handbook of personnel policies and procedures constitutes an enforceable promise by Safer to be fair to its employees. Plaintiff asserts that Safer "breached the provisions of its policy and its promise to [Plaintiff] when it acted in bad faith, failed to deal fairly with [Plaintiff] by fabricating a false reason for her termination, [and] denied her the ability to grieve her termination . . . ." (*Id.* P I.57.) Under Illinois law, [4] an employment relationship without a fixed duration is presumed [*10] to be at-will, that is, terminable by either party for any reason, but this presumption can be defeated by a showing that the parties contracted otherwise. *Duldulao v. Saint Mary of Nazareth Hosp. Ctr., 115 Ill. 2d 482, 489, 505 N.E.2d 314, 317, 106 Ill. Dec. 8 (1987).* An employee handbook may create contractual rights where (1) the handbook language "contain[s] a promise clear enough that an employee would reasonably believe that an offer has been made," (2) the offer is disseminated to the employee such that the employee is aware of it, and (3) the employee accepts "by commencing or continuing to work after learning of the policy statement." *Id. at 490, 505 N.E.2d at 318.* The issue here is whether Safer's handbook meets this first requirement.

> [4] The court applies Illinois law to this count and the other pendent claims--counts II, IV, V, VI, and VII. See *Shore v. Dandurand, 875 F.2d 656, 659 (7th Cir. 1989).*

The handbook contains a disclaimer as well as language that reiterates that Safer employees [*11] are at-will employees. Therefore, Defendant argues, its terms cannot reasonably be viewed as a clear promise. Plaintiff argues that only conspicuous disclaimer provisions can negate promises in an employment handbook, and further, where, as here, the handbook creates grievance procedures, this suggests a contract. Plaintiff cites several Illinois cases, but relies most heavily on *Perman v. ArcVentures, Inc., 196 Ill. App. 3d 758, 554 N.E.2d 982, 143 Ill. Dec. 910 (1st Dist. 1990).* Safer responds that the disclaimer in the Safer handbook was not hidden but appeared on the first page, and that the grievance procedures were discretionary rather than mandatory, a key distinction. Safer points out that the Seventh Circuit has ruled that in this context disclaimer language need not be conspicuous, and also has expressed doubts about

the viability of *Perman*.

Safer has the better of this argument, for several reasons. First, the terms of the handbook that Plaintiff identifies as "clear promises" are actually equivocal or discretionary. The handbook states, "termination of service, whether initiated by the employee or by SAFER, should be handled fairly and in a timely manner." (Def. [*12] Memo, Ex. B, Safer Foundation Personnel Policy and Procedures [hereinafter Handbook], at 37.) The grievance procedure "applies to all situations except" gross misconduct, and "is designed to provide prompt, fair, and equitable resolution" of "work-related concerns, problems, and grievances." (*Id.* at 43.) The description of disciplinary procedures uses the word "may" throughout, as opposed to "shall" or "must." (*Id.* at 35.) This language is suggestive, not mandatory. The phrasing of these provisions is too weak to comprise the sort of specific guarantee necessary to offset the presumption of at-will employment. *Boulay v. Impell Corp., 939 F.2d 480, 482 (7th Cir. 1991)* (discussing Illinois law on this issue) (noting that "precatory language is not enough") (cites omitted); *Lee v. Canuteson, 214 Ill. App. 3d 137, 142-43, 573 N.E.2d 318, 322, 157 Ill. Dec. 900 (3d Dist. 1991)* ("it is the sincere intent of [employer] to be fair and reasonable with all employees at all times" not clear enough promise to constitute an offer).

Moreover, the disclaimers in the handbook are unequivocal, so even if the promises were somewhat clearer, the presence of the disclaimers precludes [*13] a reasonable belief that they constituted an offer. The introduction to the handbook states, "The Policies and Procedures are not, however, intended to create an implied or express employment contract. Neither do they affect . . . the SAFER Foundation's rights to terminate your employment with or without notice." (Handbook, at i.) At other points, the handbook emphasizes that its terms are not meant to be contractual, presumably to correct any potential misapprehensions. For example, on the subject of new employee orientation, the handbook states, "New employees are required to sign a statement indicating their attendance at the Employee Orientation. Signing such statement does not imply or constitute a written contract for employment." (*Id.* at 3.) Additionally, the section describing disciplinary procedure for gross misconduct provides, "Under no circumstances do these policies create an implied or express contract. Each employee remains terminable at will." (*Id.* at 36.) Employee handbooks must be read "as a coherent whole." *Border v. City of Crystal Lake, 75 F.3d 270, 274 (7th Cir. 1996)* (finding "hope of a contractual promise" to be "dashed" by explicit disclaimers). [*14] Here, the express and unequivocal disclaimers in Safer's handbook defeat plaintiff's argument that the discretionary language of the handbook was a clear promise reasonably meant to be an offer. *See id.; Habighurst v. Edlong Corp., 209 Ill. App. 3d 426, 427, 568 N.E.2d 226, 227, 154 Ill. Dec. 226 (1st Dist. 1991)* (disclaimer stated "this information is not to be regarded as a contract").

Nor are the disclaimers in Safer's handbook too inconspicuous. Plaintiff contends that the disclaimer must be printed in capital letters or otherwise highlighted, but conspicuousness in this context only means "'written [so] that a reasonable person against whom it is to operate ought to have noticed it.'" *Wheeler v. Phoenix Co., 276 Ill. App. 3d 156, 162, 658 N.E.2d 532, 536, 213 Ill. Dec. 62 (2d Dist. 1995)* (quoting the Illinois UCC). Safer placed disclaimer language on the first page of the handbook, in the introduction, and at two other key points in the manual as well. The disclaimers were adequate for Plaintiff to have noticed them, and she should not have understood any other language in the handbook to be a clear promise from Safer. *See Lashbrook v. Oerkfitz, 1994 U.S. Dist. LEXIS 1288, 93 C 20224, 1994* [*15] *WL 30537, at *5 (N.D. Ill. Feb. 2, 1994)* (disclaimer on the first page of handbook was sufficiently conspicuous) (citing *Hicks v. Methodist Med. Ctr., 229 Ill. App. 3d 610, 614, 593 N.E.2d 119, 121, 170 Ill. Dec. 577 (3d Dist. 1992))*.

In support of her argument, Plaintiff cites, *inter alia*, *Long v. Tazewell/Pekin Consol. Communication Ctr., 215 Ill. App. 3d 134, 574 N.E.2d 1191, 158 Ill. Dec. 798 (3d Dist. 1991)*, *Wheeler*, *Hicks*, and *Perman*. However, the equivocal grievance language and unequivocal, conspicuous disclaimers make this case factually distinguishable from those cases on which Plaintiff relies. *Perman v. ArcVentures* held that the plaintiff had a contractual right to certain disciplinary procedures, where the manual stated "discharges must be approved in advance," and "assured" every employee a right of appeal. *196 Ill. App. 3d at 765, 554 N.E.2d at 987*. This unequivocal language persuaded the court that the plaintiff had a contractual right in those particular disciplinary procedures. *Id.* Similarly, *Long* dealt with mandatory grievance language, as well as disclaimer language that the court characterized as "not unequivocal." *215 Ill. App. 3d* [*16] *at 138, 140, 574*

N.E.2d at 1193-94. In *Wheeler*, the court noted the disclaimer did "not contain the unequivocal statement that the employee handbook 'is not a contract.'" *276 Ill. App. 3d at 163, 658 N.E.2d at 537*. *Hicks* involved precise promissory language, and an inconspicuous disclaimer buried on page thirty-eight of the handbook under a section entitled "Revisions." *229 Ill. App. 3d at 614, 593 N.E.2d at 121*. In sum, in none of the cases Plaintiff cites did the court find a contract from merely suggestive handbook language, accompanied by a conspicuous unequivocal disclaimer; neither will the court do so in this case. Count I must be dismissed.

**II. Promissory Estoppel - Count II**

Plaintiff maintains that Safer promised, through the language of the handbook but also by its conduct, that its employees were entitled to grievance procedures and fair and equitable treatment. She claims she relied on this promise and that her reliance was reasonable and foreseeable. Safer objects on essentially the same grounds as discussed above: the handbook procedures were discretionary, and the handbook disclaimers were clear. Additionally, Safer argues that its grievance procedures [*17] as set forth in the handbook were inapplicable to employees terminated for gross misconduct, which was Safer's stated basis for firing Plaintiff, so she would not be entitled to grieve her case in any event.

"Promissory estoppel is an equitable device invoked to prevent a person from being injured by a change in position made in reasonable reliance on another's conduct." *Lawrence v. Board of Educ. of Sch. Dist. 189, 152 Ill. App. 3d 187, 201, 503 N.E.2d 1201, 1210, 105 Ill. Dec. 195 (5th Dist. 1987)*. To establish a promissory estoppel claim, Plaintiff must show: (1) an unambiguous promise, (2) upon which she relied to her detriment, (3) in a way that was expected and foreseeable. *See Quake Constr., Inc. v. American Airlines, Inc., 141 Ill. 2d 281, 309-10, 565 N.E.2d 990, 1004, 152 Ill. Dec. 308 (1990)*.

As to the first requirement, Plaintiff's argument that the handbook language contains an unambiguous promise must fail, for the same reasons that she cannot proceed with her breach of contract claim. *See Talanda v. KFC Nat'l Management Co., 863 F. Supp. 664, 670 (N.D. Ill. 1994)* (rejecting claim of promissory estoppel from handbook which was predicated on same grounds as [*18] breach of contract claim). Plaintiff (in her response brief) also contends that, beyond the writing of the handbook, Safer engaged in conduct which constituted a promise, including "strictly adhering to the [grievance] procedure even in cases of gross misconduct." (Pl. Resp., at 9.) Not only words but also the conduct of a party may establish a promise. *See First Nat. Bank of Chicago v. Sylvester, 196 Ill. App. 3d 902, 912, 554 N.E.2d 1063, 1070, 144 Ill. Dec. 24 (1st Dist. 1990)*.

Even assuming that Plaintiff could prove that Safer does regularly provide employees (even those accused of gross misconduct) access to grievance procedures, she has not sufficiently alleged how she relied on this promise to her detriment. Plaintiff does not and could not argue that she engaged in misconduct in reliance on the availability of a grievance mechanism. Plaintiff's brief suggests her reliance was "commencing and continuing to diligently work for Safer and by observing Safer's administration of its grievance process." (Pl. Resp., at 7.) Even taken in the light most favorable to her, however, this is no more than a claim that Plaintiff worked for Safer; it is not an adequate allegation of [*19] detrimental reliance. Defendant's motion to dismiss Count II must be granted.

**III. Bad Faith Breach of Contract - Count IV**

Plaintiff argues Safer and Dan Coughlin engaged in "bad faith breach of contract," as follows:

> Safer, and its agents, underwent a scheme to wrongfully terminate [Plaintiff] from her job, primarily because she became a liability to Safer, as its contract with the DOC was in jeopardy, since she was unable to take the PPD test for TB. In order to terminate Spight, Dan Coughlin and others fabricated the reason for dismissing Spight, to deprive her of the grievance procedure.

(Pl. Resp., at 10.) Plaintiff admits she has been unable to identify a decision that recognizes this theory of liability in an at-will employment setting. Nonetheless, she argues it is viable based on dicta from *Ledingham v. Blue Cross Plan for Hosp. Care, 29 Ill. App. 3d 339, 330 N.E.2d 540 (5th Dist. 1975), rev'd on other grounds, 64 Ill. 2d 338, 356 N.E.2d 75, 1 Ill. Dec. 75 (1976), Disario v. Enesco Imports Corp., 165 Ill. App. 3d 901, 520 N.E.2d 766, 117 Ill. Dec. 415 (4th Dist. 1987)*, and *Dykstra v. Crestwood Bank, 117 Ill. App. 3d 821, 454 N.E.2d* [*20] *51, 73 Ill. Dec. 307 (1st Dist. 1983)*.

Plaintiff's reliance on this precedent is unavailing. *Ledingham* held that an insurer and insured in a health insurance relationship have a duty to deal in good faith, and breach of this duty is actionable in tort and contract. *29 Ill. App. 3d at 350, 330 N.E.2d at 548*. Here, Plaintiff cannot show breach of contract, for the reasons already discussed. In any event, *Ledingham* is an insurance case, and courts, including *Disario*, have limited it to that context. *165 Ill. App. 3d at 904, 520 N.E.2d at 768*. So too did *Dykstra* reject the plaintiff's request to recognize a tort theory of bad faith dealing in employment cases. *117 Ill. App. 3d at 826, 454 N.E.2d at 54*.

In sum, except for retaliatory discharge and intentional infliction of emotional distress (both of which Plaintiff has pleaded separately), Illinois does not recognize any sort of tort action for bad faith dealing in the employment context. *See Harrison v. Sears, 189 Ill. App. 3d 980, 991, 546 N.E.2d 248, 255, 137 Ill. Dec. 494 (4th Dist. 1989)* ("Under Illinois precedent, no action for tortious breach of an implied covenant of good faith and fair dealing exists in the [*21] employment at will setting."); *Hugo v. Tomaszewski, 155 Ill. App. 3d 906, 911, 508 N.E.2d 1139, 1142, 108 Ill. Dec. 562 (5th Dist. 1987)*. The court declines Plaintiff's invitation to read the caselaw more broadly.

In the alternative, in her response to Coughlin's motion to dismiss, Plaintiff argues that as part of Count IV she has pleaded the elements of tortious interference with prospective economic advantage. These elements include: "(1) [plaintiff's] reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." *Fellhauer v. City of Geneva, 142 Ill. 2d 495, 511, 568 N.E.2d 870, 878, 154 Ill. Dec. 649 (2d Dist. 1991)*. Additionally, "it has been long held that the defendant's interference must be between the plaintiff and a third party." *Eisenbach v. Esformes, 221 Ill. App. 3d 440, 444, 582 N.E.2d 196, 199, 163 Ill. Dec. 930 (2d Dist. 1991)*.

There are several difficulties with allowing [*22] Plaintiff to proceed with this claim. First, Plaintiff has labeled Count IV "bad faith breach of contract," and the court doubts whether her complaint provided Coughlin with adequate notice of a claim of tortious interference. More important, supervisors and corporate officers are generally immune from this type of claim, on the grounds that Safer, and by extension, its corporate agent, cannot interfere with the right of an employee to be employed by Safer. *See Mustafa v. Illinois Dep't of Public Aid, 1997 U.S. Dist. LEXIS 3071*, No. 96 C 5177, 1997 WL 194980, at *5 (N.D. Ill. Mar. 14, 1997) (discussing the "corporate privilege" under Illinois law that protects supervisors from suit for tortious interference). In light of these concerns, Count IV is dismissed.

### IV. Retaliatory Discharge - Count V

In the fifth count of her complaint, Plaintiff alleges the common law tort of retaliatory discharge. Plaintiff claims Safer terminated her because she filed IDHR and EEOC charges complaining of discrimination. At the court's request, the parties submitted additional briefing on the question of whether the Illinois Human Rights Act (IHRA) preempts this claim. After considering the parties' briefs, the court [*23] concludes Plaintiff's retaliatory discharge claim is preempted.

It is well-settled that under Illinois law the IHRA is the "exclusive source for redress" of alleged civil rights violations. *Flaherty v. Gas Research Inst., 31 F.3d 451, 458 (7th Cir. 1994)* (citing *Mein v. Masonite Corp., 109 Ill. 2d 1, 7, 485 N.E.2d 312, 315, 92 Ill. Dec. 501 (1985)*). Thus, if Plaintiff's retaliatory discharge claim in actuality seeks redress for a civil rights violation, it is preempted. *Geise v. Phoenix Co., 159 Ill. 2d 507, 516, 639 N.E.2d 1273, 1276, 203 Ill. Dec. 454 (1994)*. In other words, where a common law claim is "inextricably linked" to an allegation of a civil rights violation, there is no independent basis for liability, and the IHRA is the source of a plaintiff's rights. *Id. at 516-17, 639 N.E.2d at 1277*.

Plaintiff's claim here is inextricably linked to an alleged civil rights violation. Plaintiff "concedes that to the extent her wrongful discharge claim is related to discriminatory treatment, it cannot proceed as a separate common law action . . . ." (Pl. Supp. Br., at 4.) She contends, however, that an alternate theory of her claim "is not predicated upon an underlying [*24] claim of discrimination": that Safer retaliated by firing her "because Safer feared Plaintiff's actions would interfere with its contractual relationship with the DOC." (*Id. at 5*.)

Even under this theory, though, Plaintiff's claim is inextricably linked to a category of civil rights violation

covered by the IHRA. No matter how she characterizes her cause of action, the gravamen of Plaintiff's claim is that Safer fired her because she filed a charge, and the IHRA defines "retaliation against a person because . . . he or she has made a charge . . . under this Act" as a civil rights violation. *775 ILCS 5/6-101.* This court therefore joins the other courts that have found retaliatory discharge claims preempted under similar circumstances. *Moreland v. HU-Friedy Mfg. Co., 1997 U.S. Dist. LEXIS 13180,* No. 95 C 4373, 1997 WL 543066, at *11 (N.D. Ill. Aug. 29, 1997) (collecting cases); *Corluka v. Bridgford Foods of Ill., 284 Ill. App. 3d 190, 193-94, 671 N.E.2d 814, 817, 219 Ill. Dec. 647 (1st Dist. 1996).* Count V is dismissed.

**V. Intentional Infliction of Emotional Distress - Count VI**

Plaintiff asserts that Safer [5] subjected her to the following "inhumane" treatment: 1) demanding that she take [*25] a medical test that was medically contraindicated; 2) pressuring her and threatening her with the loss of her job if she refused to take the medical test; 3) relieving her of her position and reassigning her without justification; 4) failing to reinstate her after she submitted to the contraindicated test; 5) refusing to discuss her job status with her; 6) fabricating an excuse to terminate her; and 6) "on information and belief," disparaging her to potential employers. (Compl. P VI.50.) Plaintiff claims this conduct was so extreme and outrageous as to constitute intentional infliction of emotional distress (IIOED).

> 5 Plaintiff sued the DOC as well, but in her response to the DOC's motion to dismiss, she withdraws her intentional infliction of emotional distress claim against the DOC. (Pl. Resp. to DOC-Shuman-Brown Mot., at 7.)

To sustain a claim for intentional infliction of emotional distress, Plaintiff must show extreme and outrageous conduct by Safer, intended or highly likely to cause severe emotional distress, [*26] that in fact caused severe emotional distress. *See Doe v. City of Calumet, 161 Ill. 2d 374, 392, 641 N.E.2d 498, 506, 204 Ill. Dec. 274 (1994).* As with retaliatory discharge, Defendant here again argues preemption, *i.e.* that this claim essentially is rooted in allegations of disability discrimination. Additionally, Defendant maintains the claim must fail because Safer's rights as an employer include the right to terminate at-will employees, including Plaintiff, and this action therefore could not be extreme and outrageous.

Plaintiff contends that her allegations of IIOED are separable and distinct from her allegations of discrimination. The court disagrees. First, Count VI restates her description of Safer's alleged discrimination from the initial paragraphs of the complaint. Further, the specific examples of alleged mistreatment listed above all pertain to the conflict between Plaintiff and Safer and the DOC over Plaintiff's medical condition and the TB test. These allegations are "inextricably linked" to the overarching theory that Plaintiff was treated differently because she has lupus. Therefore, her avenue of redress is under the IHRA. *See 775 ILCS 5/1-102(A),* 2-102(A); [*27] *Westphal v. City of Chicago, 8 F. Supp. 2d 809, 812 (N.D. Ill. 1998)* (dismissing an IIOED claim on preemption grounds).

If the court were to parse the language of the complaint and read out any reference to Plaintiff's medical condition, the remaining allegations would be that Safer without explanation reassigned and then fired Plaintiff, and spoke ill of her to potential employers. These allegations cannot survive a motion to dismiss. As the Illinois Supreme Court long ago made clear,

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice' or a degree of aggravation which would entitle plaintiff to punitive damages for another tort. Liability has been found [only when the conduct] is so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency.

*Public Fin. Corp. v. Davis, 66 Ill. 2d 85, 89-90, 360 N.E.2d 765, 767, 4 Ill. Dec. 652 (1976).* Under Illinois law, the arbitrary firing of an at-will employee, even coupled with negative comments to the employee's possible future [*28] employers, does not rise to the level of extreme and outrageous conduct. *See Pratt v. Caterpillar Tractor Co., 149 Ill. App. 3d 588, 591, 500 N.E.2d 1001, 1003-004, 102 Ill. Dec. 900 (3d Dist. 1986)* ("Discharge of an employee at will is within the employer's right and does not constitute extreme and outrageous conduct which is required to maintain a cause of action for [IIOED]."); *Harris v. First Fed. Sav. &*

Case 1:08-cv-00609   Document 9-8   Filed 02/01/2008   Page 9 of 11

Page 8
1999 U.S. Dist. LEXIS 4170, *28

*Loan Assoc. of Chicago,* 129 Ill. App. 3d 978, 981, 473 N.E.2d 457, 459, 85 Ill. Dec. 89 (1st Dist. 1984) (granting motion to dismiss IIOED claim where employer subjected employee to mistreatment, embarrassment and humiliation). Count VI is dismissed.

## VI. Defamation - Count VII

Plaintiff claims that Jimmy Ellis, a DOC Superintendent who is now deceased, sent Coughlin a memorandum "which implied that [Plaintiff] could be the carrier of a loathsome disease," and demanded that she "be removed from her job site." (Compl. P VII.50.) The memorandum stated, "'Due to the possibility that Ms. Spight may be spreading the TB virus to staff and residents, it is in the best interests of all concerned that she be removed from the facility where she would be in direct contact [*29] with residents and IDOC staff.'" (*Id.* P 28.) Plaintiff believes Ellis knew she did not have TB. (*Id.* P VII.55.) She claims Shuman and Brown directed and approved Ellis's drafting and circulation of this memorandum, and thereby "wrongfully imputed this loathsome disease" to her. (*Id.* PP VII.53, VII.56.) She sues Brown and Shuman, each in their individual capacity, for libel and slander *per se.* [6]

> 6  As Defendants have not raised the issue, the court passes no judgment on whether this claim is timely. See *735 ILCS 5/13-201* ("Actions for slander, libel or for publication of matter violating the right of privacy, shall be commenced within one year next after the cause of action accrued.")

Defendants move to dismiss on the grounds that tuberculosis is not a loathsome disease. Plaintiff responds that even if it is not a loathsome disease, tuberculosis is "'a communicable disease which would exclude one from society,'" and Defendants prejudiced her in her "'profession or trade,'" and consequently [*30] her claim should go forward. (Pl. Resp. to Brown and Shuman's Mot., at 8) (quoting *Brown & Williamson Tobacco Corp. v. Jacobson,* 713 F.2d 262, 268 (7th Cir. 1983)).

The court will not exercise its supplemental jurisdiction over this claim. Under *28 U.S.C. § 1367(c)(1),(4),* a federal court may decline to exercise supplemental federal jurisdiction over a state law claim where the "claim raises a novel or complex issue of State law," or for "other compelling reasons." Plaintiff has no remaining federal claims against Shuman and Brown; her defamation claim is a lone common-law tort action which need not be tried along with Plaintiff's ADA claim against Safer. *Cf. Hunt Paving Co. v. City of Indianapolis,* 800 F. Supp. 740, 751 (S.D. Ind. 1992) (declining to exercise supplemental jurisdiction over "claim between non-diverse parties based solely on [Indiana] law"). Further, this count presents complex issues of state law (that neither party has addressed in their briefs), including qualified privilege, [7] see *Turner v. Fletcher,* 302 Ill. App. 3d 1051, 706 N.E.2d 514, 517, 235 Ill. Dec. 959, (4th Dist. 1999), and absolute immunity, see *Geick v. Kay,* 236 Ill. App. 3d 868, 876, 603 N.E.2d [*31] 121, 127, 177 Ill. Dec. 340 (2d Dist. 1992). In the interests of comity and sound judicial administration, and pursuant to its prerogative under *Section 1367(c),* the court declines to take jurisdiction over Count VII. This count is dismissed without prejudice to Plaintiff's right to pursue this cause of action in state court.

> 7  Defendants claim qualified immunity, under *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982), but that doctrine applies to alleged statutory or constitutional violations, not common law tort claims.

## VII. Due Process - Count VIII

Count VIII alleges Defendants Brown, Shuman, Coughlin, Safer, Crossroads [8] and the DOC deprived Plaintiff of due process. Plaintiff asserts Brown, Shuman and Coughlin are "duly appointed agents of the State of Illinois." (Compl. PP VIII.48.) Plaintiff claims "a liberty interest in her reputation and in pursuing her lawful avocation," and "a property interest in the expectation of continued employment and in due process [*32] in any termination proceeding." (*Id.* PP VIII.50, VIII.51.) According to the complaint, Plaintiff's loss of her job and loss of "her ability to file a grievance according to the procedures set forth by defendants" amounted to denial of due process. (*Id.* P VIII.57.)

> 8  Although named separately in the complaint, Crossroads has not moved to dismiss, nor does Safer's motion mention whether it is filed on behalf of Crossroads. However, all the court's rulings as to Safer are equally applicable to Crossroads.

All defendants raise the defense of sovereign immunity under the *Eleventh Amendment.* Since it is a jurisdictional matter, the court first examines the *Eleventh Amendment* issue, and then proceeds to the question of

whether Plaintiff has adequately alleged that she had constitutionally-protected interests.

*Eleventh Amendment*

The *Eleventh Amendment* bars federal courts from exercising jurisdiction over actions for money damages "against a state brought by her own citizens." *Scott v. O'Grady,* [*33] *975 F.2d 366, 369 (7th Cir. 1992).* Here, the DOC must be dismissed as a defendant with regard to this count; the Seventh Circuit has held that the *Eleventh Amendment* shields the Illinois DOC from suits for money damages by citizens of the state. *Gutierrez v. Peters, 111 F.3d 1364, 1368 n.3 (7th Cir. 1997).* By the same token, DOC employees Shuman and Brown may not be sued in their official capacities. *See Knox v. McGinnis, 998 F.2d 1405, 1412 (7th Cir. 1993)* ("It is by now well settled that a suit for damages against a state official in his or her official capacity is a suit against the state for *Eleventh Amendment* purposes.") (quotes omitted).

Safer and Coughlin [9] also contend that they are entitled to *Eleventh Amendment* immunity. Rather than attempt to argue that Section 1983 does not apply because Safer is a private company, [10] they insist they should receive sovereign immunity because they are state agents. They note that Plaintiff alleges that they acted "under the color of state law," (Compl. P VIII.56), and claim that this binding allegation confers on them status as state agents. Plaintiff sues Coughlin in his individual capacity, however, making the issue moot as [*34] to him. (Compl., at 1). The court finds Plaintiff's general allegation that Safer acted under color of law is insufficient to establish that Safer is a state agency for purposes of the *Eleventh Amendment.* Based on the allegations of the complaint, Safer and Coughlin are not protected by the *Eleventh Amendment.*

> 9  For his motion to dismiss, Coughlin adopted Safer's arguments from its opening brief in support of its motion to dismiss. Coughlin filed his own reply brief.
>
> 10  The court has serious questions as to whether Safer and Coughlin can be considered state actors for purposes of Section 1983. *See Cunningham v. Southlake Ctr. for Mental Health, 924 F.2d 106, 107-09 (7th Cir. 1991)* (holding that private mental health services contractor in county jail was not a state actor, for purposes of employee's Section 1983 suit against contractor). Neither party addresses this issue, however.

**Liberty and Property Interests**

Whether Plaintiff's due process rights were violated depends on whether she [*35] had either a property interest or liberty interest protected by the *Fourteenth Amendment. See Board of Regents v. Roth, 408 U.S. 564, 569, 92 S. Ct. 2701, 2705, 33 L. Ed. 2d 548 (1972).* Safer and Coughlin argue that she did not. According to Defendants, as an at-will employee, Plaintiff had no property interest in her position, and she had no liberty interest in her reputation.

To state a claim for deprivation of occupational liberty, Plaintiff must allege that 1) she was discharged, 2) her employer publicly disclosed stigmatizing information about her incident to the discharge, and 3) she suffered a tangible loss of employment opportunities as a result. *McMath v. City of Gary, 976 F.2d 1026, 1031-32 (7th Cir. 1992).* Plaintiff's complaint alleges only that Defendants infringed Plaintiff's liberty interest, and "caused considerable damage to the plaintiff's professional reputation and reputation in the community and will continue to cause significant damage to her reputation." (Compl. P VIII.58.) In her brief, Plaintiff maintains that "on information and belief . . . derogatory information has been disseminated by Safer regarding [Plaintiff's] employment and termination," [*36] thereby damaging her reputation and limiting her ability to get another job. (*Id.*) "[A] plaintiff is free, in defending against a motion to dismiss, to allege without evidentiary support any facts she pleases that are consistent with the complaint"; she need not plead those facts. *Early v. Bankers Life & Casualty Co., 959 F.2d 75, 79 (7th Cir. 1992).* However, the hypothesized facts must still relate to the scope of the complaint. Here, Plaintiff's vague conclusory allegations fail to state a claim. *See Harris v. City of Auburn, 27 F.3d 1284, 1286 (7th Cir. 1994)* (upholding dismissal of a complaint that was "virtually devoid of any information regarding the public disclosure of these allegedly stigmatizing statements").

Plaintiff requests leave to amend her pleadings on this score, and the court generally follows the rule that leave to amend at this juncture in the case should be freely given. Plaintiff should be aware of several potential pitfalls, however. The court has already expressed its concern about Safer and Coughlin's status as state actors. Even assuming she can meet this requirement, Plaintiff must demonstrate that the public

disclosure of stigmatizing information [*37] must have occurred "incident to" her firing, meaning it accompanied or was virtually contemporaneous with the termination. *See Siegert v. Gilley, 500 U.S. 226, 233, 111 S. Ct. 1789, 1794, 114 L. Ed. 2d 277 (1991); Pendleton v. City of Haverhill, 156 F.3d 57, 63 (1st Cir. 1998); Wroblewski v. City of Washburn, 965 F.2d 452, 456 (7th Cir. 1992).* Further, Plaintiff's lost opportunities must have been in attempts to gain government, not private, employment. *Pendleton, 156 F.3d at 63* (noting that opportunities lost must be "government benefices denied as a result of government action"). The assertions in Plaintiff's brief appear to run afoul of both of these requirements. If, however, she believes she can re-plead a viable deprivation of occupational liberty claim, the court will allow her to do so.

Plaintiff also contends that the "agreement and promises in the [Safer] employee handbook as well as established by the conduct of Safer" created a property interest in her employment. (Pl. Resp. to Coughlin Mot., at 12.) As discussed earlier, Plaintiff was an at-will employee, and the handbook was not a contract which altered this status. It is well-established that an at-will [*38] employee does not have a constitutionally protected property right in continued employment. *Harris, 27 F.3d at 1286; Campbell v. City of Champaign, 940 F.2d 1111, 1112 (7th Cir. 1991).* Plaintiff urges, however, that Safer's conduct in adhering to certain termination procedures established a property interest. (*See* Pl. Resp. to Safer's Mot., at 15.) But even if Safer's conduct created a right to, *e.g.*, grievance procedures, Plaintiff cannot prevail. "A contract that creates merely a right to a procedure does not create a property right within the meaning of the due process clause." *Campbell, 940 F.2d at 1113* (quotes omitted). By this standard, the court concludes that Plaintiff had no constitutionally-protected property interest, either in her employment or in particular disciplinary procedures. *See id.* ("When the claimed deprivation of property is the loss of a job, the entitlement must be to a job, rather than just to a set of disciplinary procedures.").

Because Plaintiff cannot demonstrate that any constitutionally-protected interests were violated, she cannot proceed against any of the Defendants with her due process claim. The court need not reach Shuman [*39] and Brown's argument that they had too little involvement in Plaintiff's transfer and dismissal to incur Section 1983 liability. Count VIII is dismissed.

## CONCLUSION

Shuman, Brown and the DOC's motion is granted; Coughlin's motion is granted; Safer's motion is granted. Counts I, II, IV, V, VI, VII, and VIII are dismissed. In her briefs, Plaintiff seeks leave to file an amended complaint, particularly with regard to Count II (promissory estoppel), Count IV (to allege tortious interference), and Count VIII (due process). As the court has observed, any re-pleading of these counts must overcome serious and perhaps insurmountable hurdles. Consequently, the court will consider a motion for leave to amend only if it is accompanied by a proposed amended complaint that cures the difficulties the court has identified in this opinion.

ENTER:

Dated: March 26, 1999

REBECCA R. PALLMEYER

United States District Judge