**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ROGER L. RILEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 08 CV 609 |
| | ) | |
| v. | ) | Judge Matthew F. Kennelly |
| | ) | |
| U.S. REMODELERS, INC. (incorrectly named | ) | Magistrate Judge Arlander Keys |
| as U.S. Home Systems d/b/a U.S. Home | ) | |
| Remodelers), | ) | |
| | ) | |
| Defendant. | ) | |

**FIRST AMENDED COMPLAINT**

Plaintiff, Roger L. Riley ("Mr. Riley"), through his undersigned attorneys, complains as

follows:

**PARTIES, JURISDICTION, AND VENUE**

1.     Mr. Riley is an individual residing in Bartlett, Illinois.  Mr. Riley is African-

American.

2.     Defendant, U.S. Remodelers, Inc. ("Remodelers"), is a corporation with its

principal place of business in Lewisville, Texas.  Remodelers conducts business in Mount

Prospect, Illinois.

3.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this is a civil action

arising under the laws of the United States, namely 42 U.S.C. § 1981, and also under 28 U.S.C. §

1332, as the parties to this action are citizens of different states and the amount in controversy

exceeds $75,000.

4.     Venue is proper in this District pursuant to 28 U.S.C. § 1391.

**FACTUAL BACKGROUND**

5.      On August 18, 2007, Mr. Riley was hired by Remodelers as a Sales Representative.

6.      As part of Mr. Riley's employment, Remodelers was to provide sales leads to Mr. Riley.  Mr. Riley was to contact these leads and sell kitchen cabinets and remodeling projects on behalf of Remodelers.  Remodelers was to pay Mr. Riley a commission on the kitchen sales he made on behalf of Remodelers.  Mr. Riley was told by Dan Butler, Mr. Riley's first manager at Remodelers and the individual who hired Mr. Riley, that Sales Representatives of Remodelers would be able to earn over $90,000 per year.

7.      Mr. Riley performed 80 hours of training for Remodelers between August 20, 2007 and August 31, 2007, for which he was paid $600.  Remodelers delayed the issuance of Mr. Riley's paycheck for this training period for three weeks after Mr. Riley's scheduled pay day.

8.      Richard Mantle ("Mr. Mantle") and Marty Warning ("Mr. Warning") distributed sales leads to Mr. Riley and the other 4 to 5 Sales Representatives located in the Mount Prospect office.

9.      At the time he was hired, Mr. Riley was the only African-American Sales Representative in the Mount Prospect office.

10.     Because Mr. Riley resided in Bartlett, Illinois and Remodelers did not reimburse gas or transportation expenses, Mr. Riley hoped to visit leads in and around Bartlett, Illinois. Additionally, the Northwest suburbs of Chicago, including Bartlett, Illinois, were a lucrative area for making expensive sales with higher commissions.  For these reasons, Mr. Riley repeatedly requested that Mr. Mantle and Mr. Warning provide Mr. Riley with leads in Bartlett, Illinois and

the other Northwest suburbs of Chicago.  Mr. Riley made this request to Mr. Mantle and/or Mr. Warning approximately every day Mr. Riley worked at Remodelers.

11.     Despite Mr. Riley's repeated requests for sales leads in the Northwest suburbs, Mr. Mantle and Mr. Warning repeatedly sent Mr. Riley on sales calls in less lucrative and more distant areas.  Mr. Mantle and Mr. Warning repeatedly sent Mr. Riley to predominately African-American areas despite Mr. Riley's stated preference to visit leads closer to his home.  Mr. Mantle and Mr. Warning accommodated the requests of the other 4 to 5 Sales Representatives, who were not African-American, to receive sales leads in their choice areas, including the Northwest suburbs.  In the three months of Mr. Riley's employment at Remodelers, Mr. Mantle only provided Mr. Riley with one sales lead in Mr. Riley's preferred area, despite providing sales leads in this area to the other Sales Representatives, who were not African-American, on numerous occasions.  Mr. Warning did not provide Mr. Riley with any sales leads in Mr. Riley's preferred area.

12.     Shortly after Mr. Riley began contacting his leads and submitting his sales records, Remodelers made harassing allegations about Mr. Riley and Mr. Riley's work.  For example, in October, 2007, Mark Grace ("Mr. Grace"), the measuring person at Remodelers, called Mr. Riley a racially derogatory name.  This harassment occurred at a sales meeting in front of the other Sales Representatives and Lou Apollo, a manager from Remodelers' New York office.

13.     Mr. Riley made two sales for kitchen remodeling projects with Mr. Mantle.  On these two occasions, Mr. Riley made the sales presentation while Mr. Mantle watched.  Pursuant to Remodelers' policies, Mr. Mantle and Mr. Riley were to evenly split the commissions for these sales.  Mr. Riley was never paid any commission on these sales.

14.     Mr. Riley made three individual sales for kitchen remodeling projects while at Remodelers.  Remodelers made unnecessary changes to the contracts entered into between customers and Mr. Riley, on behalf of Remodelers.  Remodelers used these changes as a pretext to withhold the full commissions on these sales due to Mr. Riley.

15.     For example, on September 10, 2007, Mr. Riley entered into a remodeling contract with Clyde and Christine Padgett for $6,100.  Remodelers' Assistant Vice President Curtis Connelly ("Mr. Connelly") approved the sale of this kitchen for $6,100.  Remodelers later claimed that the remodeling project was valued at $9,761.  Because Remodelers deemed this contract was undersold, Remodelers paid Mr. Riley a 2% commission instead of a 9% commission.

16.     On September 11, 2007, Mr. Riley entered into a remodeling contract with Bradley Collingwood for $4,509.  While on site for this lead, Mr. Riley received a phone call from Mr. Connelly.  Mr. Riley originally valued this contract at approximately $6,500, but Mr. Connelly instructed Mr. Riley to offer the customer $2,000 in incentives.  Remodelers subsequently claimed that the remodeling project was valued at $10,730.  Because Remodelers deemed this contract was undersold, Remodelers paid Mr. Riley a 2% commission instead of a 9% commission.

17.     On information and belief, Mr. Grace, the same person who openly called Mr. Riley a racially derogatory name at the October, 2007 sales meeting, was one of the people at Remodelers responsible for valuing contracts.

18.     On September 26, 2007, Mr. Riley filed charge No. #2008CA0744 with the Illinois Department of Human Rights ("IDHR"), alleging discrimination and harassment on the part of Remodelers.  Ex. A hereto.

19.    In or around October of 2007, Remodelers hired over 20 additional Sales Representatives to work out of the Mount Prospect office.  Of these over 20 new hires, only one was African-American.  Mr. Riley referred two African-American individuals to Remodelers before these over 20 Sales Representatives were hired but Remodelers did not hire either of Mr. Riley's referrals.

20.    On November 2, 2007, Remodelers' Vice President David Gross ("Mr. Gross"), who was located in Texas, called Mr. Riley's cell phone while Mr. Riley was driving to visit a sales lead.  During this conversation, Mr. Gross demanded that Mr. Riley withdraw the IDHR charge.  Mr. Gross admitted that Remodelers made a mistake by not paying Mr. Riley his portion of the commissions from the two sales Mr. Riley made with Mr. Mantle.  Mr. Gross offered to pay Mr. Riley these sales commissions and an additional $3,000 if Mr. Riley would withdraw the charge.  Despite his admission that Remodelers had mistakenly withheld two sales commissions owed to Mr. Riley, Mr. Gross conditioned this payment upon the withdrawal of Mr. Riley's charge.  Mr. Riley informed Mr. Gross that he have to would miss work on Monday, November 5, 2007, to go to the IDHR.  Mr. Gross approved the absence and informed Mr. Riley that he could take the entire day off.

21.    On November 5, 2007, Mr. Riley visited the IDHR, which led to a discussion of his rights with IDHR personnel.  Mr. Riley thereafter filed a second charge with the IDHR, charge No. 2008CA1138, alleging retaliation, as well as discrimination and harassment.  Ex. B hereto.

22.    Between November 7, 2007 and November 16, 2007, Mr. Riley performed approximately 30 additional hours of training.  Mr. Riley earned $7.50 per hour and was only permitted to attend training for 4 hours per day, despite Mr. Riley's offer to attend training for 8

5

hours per day. While Mr. Riley was in training at least three of Mr. Riley's customers called Remodelers and requested to speak to Mr. Riley. On information and belief, Remodelers' Sales Manager Jon Gilge ("Mr. Gilge") told at least one of these customers that Mr. Riley was no longer employed by Remodelers.

23.     Around the time that Mr. Riley was in this second session of training, Remodelers hired approximately 6 more Sales Representatives. Only one of these 6 new hires was African-American. On information and belief, Remodelers withheld the paycheck for the African-American new hire's training pay for three weeks after his scheduled pay day. On information and belief, that individual has since left his employment with Remodelers

24.     On November 16, 2007, Mr. Gilge approved a two week leave of absence that Mr. Riley requested. Mr. Gilge and Mr. Riley spoke in person and Mr. Gilge encouraged Mr. Riley that Mr. Riley would come back from the leave of absence and become the top salesman of the office.

25.     On November 19, 2007, after finding out that Mr. Riley had filed a second charge with the IDHR, Mr. Gross sent Mr. Riley an email purporting to terminate Mr. Riley's employment with Remodelers effective November 16, 2007. Ex. C hereto.

26.     Also on November 19, 2007, Mr. Gilge sent an email reminder to Mr. Riley regarding the start time of a sales meeting on November 20, 2007. Ex. D hereto.

27.     On November 20, 2007, Mr. Gross sent an email to Mr. Riley asserting that Remodelers "has attempted to negotiate a resolution of matters with you in good faith" and accusing Mr. Riley of "not respond[ing] in kind." Ex. E hereto. Mr. Gross further accused Mr. Riley of lacking good faith and "attempt[ing] to misconstrue our discussions regarding a possible resolution of complaints and other issues." *Id.*

## COUNT I
### 42 U.S.C. § 1981 – Retaliation

28.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 27 above as though fully set forth herein.

29.     Mr. Riley filed charges with the IDHR on September 26, 2007.  This was statutorily-protected conduct.

30.     On November 2, 2007, Mr. Gross demanded that Mr. Riley drop his IDHR charge and promised to pay Mr. Riley sales commissions that Mr. Gross admitted had been erroneously withheld from Mr. Riley, and an additional $3,000 for withdrawing the September 26, 2007 charge.  Mr. Riley refused to give into this demand and filed a second charge for retaliation, among other things, with the IDHR on November 5, 2007.  This, too, was statutorily-protected conduct.

31.     Mr. Riley's employment was terminated by Remodelers effective November 16, 2007, less than two weeks after Mr. Riley's refusal to comply with Mr. Gross's demand and the filing of his second IDHR charge.

32.     Mr. Riley was terminated by Remodelers in retaliation for engaging in the statutorily-protected conduct of filing the charges with the IDHR.

33.     As a result of Remodelers' retaliatory discharge of Mr. Riley, in violation of 42 U.S.C. § 1981, Mr. Riley has suffered financial harm and endured emotional distress.

## COUNT II
### 42 U.S.C. § 1981 – Discrimination

34.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 33 above as though fully set forth herein.

35.     Mr. Riley is African-American.

36.     Mr. Riley satisfactorily performed his work for Remodelers.

37.    Mr. Riley was given sales leads further away from his home and in less lucrative areas than the other Sales Representatives, who are not African-American.

38.    On information and belief, Mr. Riley was disciplined for missing sales meetings while other Sales Representatives, who are not African-American, frequently missed sales meetings and were not disciplined.

39.    On information and belief, Mr. Riley was disciplined for not visiting sales leads to make a sales presentation, while other Sales Representatives, who are not African-American, missed sales leads and were not disciplined.

40.    On information and belief, Mr. Riley received 2% commissions under the pretext that he undersold kitchen projects, while other Sales Representatives, who are not African-American, undersold kitchen projects but received the full 9% commission.

41.    Mr. Riley was called a racially derogatory name by Mr. Grace at an October, 2007 sales meeting.

42.    Mr. Riley's paycheck for his initial training with Remodelers was withheld for three weeks after his scheduled pay day.  On information and belief, Remodelers also withheld for three weeks the training paycheck of another African-American Sales Representative employed by Remodelers' Mount Prospect office between August, 2007 and November, 2007. On information and belief, Remodelers did not withhold paychecks of other Sales Representatives, who were not African-American, for three weeks.

43.    After approximately three months of enduring this harassment, discriminatory discipline, and discriminatory treatment, Mr. Riley's employment was terminated.

44.    As a result of Remodelers' retaliatory discharge of Mr. Riley, in violation of 42 U.S.C. § 1981, Mr. Riley has suffered financial harm and endured emotional distress.

**WHEREFORE**, Plaintiff Roger L. Riley respectfully prays for judgment against Defendant U.S. Remodelers, Inc., for compensatory damages, back pay, punitive damages, attorneys' fees, costs, and any such other and further relief as the Court may deem just and proper.

Plaintiff also demands trial by jury.

Dated:  July 24, 2008                    Respectfully submitted,
                                                        Roger L. Riley


                                        By: /s/ Catherine L. Doyle
                                              One of his attorneys

                                        Bettina Getz
                                        Catherine L. Doyle
                                        Mayer Brown LLP
                                        71 S. Wacker Drive
                                        Chicago, IL 60606
                                        bgetz@mayerbrown.com
                                        cdoyle@mayerbrown.com
                                        (312) 706-0600 (t)
                                        (312) 701-7711 (f)

                                        *Attorneys for Plaintiff*
                                        *Roger L. Riley*