**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **Roger L. Riley,** | |
| Plaintiff, | Civil Action No. 08 cv 609 |
| v. | |
| **U.S. Remodelers, Inc. (incorrectly named as U.S. Home Systems d/b/a U.S. Home Remodelers),** | Judge Matthew F. Kennelly<br>Magistrate Judge Arlander Keys |
| Defendant. | |

**ANSWER AND AFFIRMATIVE DEFENSES
TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant, U.S. Remodelers, Inc. (incorrectly named as U.S. Home Systems d/b/a/ U.S. Home Remodelers, ("U.S. Remodelers" or "Defendant"), by and through its undersigned counsel, hereby submits its Answer and Affirmative Defenses to Plaintiff's Complaint as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.      Mr. Riley is an individual residing in Bartlett, Illinois.  Mr. Riley is African-American.

**ANSWER:**    Defendant admits that Mr. Riley, ("Mr. Riley" or "Plaintiff"), is African-American.  Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 1 and therefore denies them.

2.      Defendant, U.S. Remodelers, Inc. ("Remodelers"), is a corporation with its principal place of business in Lewisville, Texas.  Remodelers conducts business in Mount Prospect, Illinois.

**ANSWER:**    Defendant admits that its principal place of business is in the state of Texas and that it has a branch office in Mount Prospect, Illinois.  Defendant denies each and every remaining allegation contained in Paragraph 2.

3.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this is a civil action arising under the laws of the United States, namely 42 U.S.C. § 1981, and also under 28 U.S.C. § 1332, as the parties to this action are citizens of different states and the amount in controversy exceeds $75,000.

**ANSWER:**    Defendant admits that this Court has jurisdiction under 28 U.S.C. § 1332, as the parties to this action are citizens of different states and the amount in controversy exceeds $75,000.  Defendant denies each and every remaining allegation contained in Paragraph 3.

4.    Venue is proper in this District pursuant to 28 U.S.C. § 1391.

**ANSWER:**    Defendant admits the allegation contained in Paragraph 4.

## FACTUAL BACKGROUND

5.    On August 18, 2007, Mr. Riley was hired by Remodelers as a Sales Representative.

**ANSWER:**    Defendant admits that Mr. Riley was effectively employed by Defendant as of August 27, 2007.  Defendant denies each and every remaining allegation contained in Paragraph 5.

6.    As a part of Mr. Riley's employment, Remodelers was to provide sales leads to Mr. Riley.  Mr. Riley was to contact these leads and sell kitchen cabinets and remodeling projects on behalf or Remodelers.  Remodelers was to pay Mr. Riley a commission on the kitchen sales he made on behalf of Remodelers.  Mr. Riley was told by Dan Butler, Mr. Riley's first manager at Remodelers and the individual who hired Mr. Riley, that Sales Representatives of Remodelers would be able to earn over $90,000 per year.

**ANSWER:**    Defendant admits that it provides sales leads to its commissioned sales representatives, whose job duties are, in part, to contact these leads and sell them products and

-2-

services on behalf of U.S. Remodelers.  Defendant admits that it pays its sales representatives by

commissions, in accordance with its Sales Associate Compensation Plan.  Defendant is without

knowledge or information sufficient to form a belief as to the truth or falsity of the remaining

allegations contained in Paragraph 6 and therefore denies them.

7.    Mr. Riley performed 80 hours of training for Remodelers between August 20, 2007 and August 31, 2007, for which he was paid $600. Remodelers delayed the issuance of Mr. Riley's paycheck for this training period for three weeks after Mr. Riley's scheduled pay day.

**ANSWER:**    Defendant admits that it paid Mr. Riley $600 for attending training

classes.  Defendant denies each and every remaining allegation contained in Paragraph 7.

8.    Richard Mantle ("Mr. Mantle") and Marty Warning ("Mr. Warning") distributed sales leads to Mr. Riley and the other 4 to 5 Sales Representatives located in the Mount Prospect office.

**ANSWER:**    Defendant denies each and every allegation contained in Paragraph 8.

9.    At the time he was hired, Mr. Riley was the only African-American Sales Representative in the Mount Prospect office.

**ANSWER:**    Defendant is without knowledge or information sufficient to form a belief

as to the truth or falsity of the allegations contained in Paragraph 9 and therefore denies them.

10.    Because Mr. Riley resided in Bartlett, Illinois and Remodelers did not reimburse gas or transportation expenses, Mr. Riley hoped to visit leads in and around Bartlett, Illinois. Additionally, the Northwest suburbs of Chicago, including Bartlett, Illinois, were a lucrative area for making expensive sales with higher commissions.  For these reasons, Mr. Riley repeatedly requested that Mr. Mantle and Mr. Warning provide Mr. Riley with leads in Bartlett, Illinois and the other Northwest suburbs of Chicago.  Mr. Riley made this request to Mr. Mantle an/or Mr. Warning approximately every day Mr. Riley worked at Remodelers.

**ANSWER:**    Defendant admits that it does not reimburse gas or transportation expenses

for its sales representatives.  Defendant denies each and every remaining allegation contained in

Paragraph 10.

11.    Despite Mr. Riley's repeated requests for sales leads in the Northwest suburbs, Mr. Mantle and Mr. Warning repeatedly sent Mr. Riley on sales calls in less lucrative and more distant areas.  Mr. Mantle and Mr. Warning repeatedly sent Mr. Riley to predominately African-American areas despite Mr. Riley's stated preference to visit leads closer to his home.  Mr. Mantle and Mr. Warning accommodated the requests of the other 4 to 5 Sales Representatives, who were not African-American, to receive sales leads in their choice areas, including the Northwest suburbs.  In the three months of Mr. Riley's employment at Remodelers, Mr. Mantle only provided Mr. Riley with one sales lead in Mr. Riley's preferred area, despite providing sales leads in this area to the other Sales Representatives, who were not African-American, on numerous occasions.  Mr. Warning did not provide Mr. Riley with any sales leads in Mr. Riley's preferred area.

**ANSWER:**    Defendant denies each and every allegation contained in Paragraph 11.

12.    Shortly after Mr. Riley began contacting his leads and submitting the sales records, Remodelers made harassing allegations about Mr. Riley and Mr. Riley's work.  For example, in October, 2007, Mark Grace ("Mr. Grace"), the measuring person at Remodelers, called Mr. Riley a racially derogatory name.  This harassment occurred at a sales meeting in front of the other Sales Representatives and Lou Apollo, a manager from Remodelers' New York office.

**ANSWER:**    Defendant denies each and every allegation contained in Paragraph 12.

13.    Mr. Riley made two sales for kitchen remodeling projects with Mr. Mantle.  On these two occasions, Mr. Riley made the sale presentation while Mr. Mantle watched.  Pursuant to Remodelers' policies, Mr. Mantle and Mr. Riley were to evenly split the commissions for these sales.  Mr. Riley was never paid any commission on these sales.

**ANSWER:**    Defendant denies each and every allegation contained in Paragraph 13.

14.    Mr. Riley made three individual sales for kitchen remodeling projects while at Remodelers.  Remodelers made unnecessary changes to the contracts entered into between customers and Mr. Riley, on behalf of Remodelers.  Remodelers used these changes as a pretext to withhold the full commissions on these sales due to Mr. Riley.

**ANSWER:**    Defendant admits that Mr. Riley consummated three sales during his employment with U.S. Remodelers.  Defendant denies each and every remaining allegation contained in Paragraph 14.

15.    For example, on September 10, 2007, Mr. Riley entered into a remodeling contract with Clyde and Christine Padgett for $6,100.  Remodelers' Assistant Vice President Curtis Connelly ("Mr. Connelly") approved the sale of this kitchen for $6,100.  Remodelers later claimed that the remodeling project as valued at $9,761.  Because Remodelers deemed this

contract undersold, Remodelers paid Mr. Riley a 2% commission instead of a 9% commission.

**ANSWER:**    Defendant admits that, on September 10, 2007, Plaintiff entered into a

contract with Clyde and Christine Padgett for $6,100.  Defendant further admits that it paid Mr.

Riley a 2% commission in accordance with its Sales Associate Compensation Plan.  Defendant

denies each and every remaining allegation contained in Paragraph 15.


16.    On September 11, 2007, Mr. Riley entered into a remodeling contract with
Bradley Collinwood for $4,509.  While on site for this lead, Mr. Riley received a phone call form
Mr. Connelly.  Mr. Riley originally valued this contract at approximately $6,500, but Mr.
Connelly instructed Mr. Riley to offer the customer $2,000 in incentives.  Remodelers
subsequently claimed that the remodeling project was valued at $10,730.  Because Remodelers
deemed this contract was undersold, Remodelers paid Mr. Riley a 2% commission instead of a
9% commission.

**ANSWER:**    Defendant admits that, on September 11, 2007, Plaintiff entered into a

contract with Bradley Collingwood for $4,509.  Defendant further admits that it paid Mr. Riley a

2% commission in accordance with its Sales Associate Compensation Plan.  Defendant denies

each and every remaining allegation contained in Paragraph 16.


17.    On information and belief, Mr. Grace, the same person who openly called Mr.
Riley a racially derogatory name at the October, 2007 sales meeting, was one of the people at
Remodelers responsible for valuing contracts.

**ANSWER:**    Defendant denies each and every allegation contained in Paragraph 17.

18.    On September 26, 2007, Mr. Riley file charge #2008 CA 0744 with the Illinois
Department of Human Rights ("IDHR"), alleging discrimination and harassment on the part of
Remodelers.  Ex. A hereto.

**ANSWER:**    Defendant admits that Plaintiff filed Charge Number 2008 CA 0744 with

the Illinois Department of Human Rights on September 26, 2007.  Defendant denies each and

every remaining allegation contained in Paragraph 18.

19.    In or around October of 2007, Remodelers hired over 20 additional Sales

Representatives to work out of the Mount Prospect office. Of these over 20 new hires, only one was African-American. Mr. Riley referred two African-American individuals to Remodelers before those over 20 Sales Representatives were hired by Remodelers did not hire either of Mr. Riley's referrals.

**ANSWER:**     Defendant denies each and every allegation contained in Paragraph 19.

20.     On November 2, 2007, Remodelers' Vice President David Gross ("Mr. Gross"), who was located in Texas, called Mr. Riley's cell phone while Mr. Riley was driving to visit a sales lead. During this conversation, Mr. Gross demanded that Mr. Riley withdraw the IDHR charge. Mr. Gross admitted that Remodelers made a mistake by not paying Mr. Riley his portion of the commissions from the two sales Mr. Riley made with Mr. Mantle. Mr. Gross offered to pay Mr. Riley these sales commissions and an additional $3,000 if Mr. Riley would withdraw the charge. Despite his admission that Remodelers had mistakenly withheld two sales commissions owed to Mr. Riley, Mr. Gross conditioned this payment upon the withdrawal of Mr. Riley's charge. Mr. Riley informed Mr. Gross that he have to would (sic) miss work on Monday, November 5, 2007 to go to the IDHR. Mr. Gross approved the absence and informed Mr. Riley that he could take the entire day off.

**ANSWER:**     Defendant denies each and every allegation contained in Paragraph 20.

21.     On November 5, 2007, Mr. Riley visited the IDHR, which led to a discussion of his rights with IDHR personnel. Mr. Riley thereafter filed a second charge with the IDHR, charge No. 2008 CA 1138, alleging retaliation, as well as discrimination and harassment. Ex. B hereto.

**ANSWER:**     Defendant admits that Plaintiff filed Charge Number 2008 CA 1138 with the Illinois Department of Human Rights on November 5, 2007. Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 21 and therefore denies them.

22.     Between November 7, 2007 and November 16, 2007, Mr. Riley performed approximately 30 additional hours of training. Mr. Riley earned $7.50 per hour and was only permitted to attend training for 4 hours per day, despite Mr. Riley's offer to attend training for 8 hours per day. While Mr. Riley was in training at least three of Mr. Riley's customers called Remodelers and requested to speak to Mr. Riley. On information and belief, Remodelers' Sales Manager Jon Gilge ("Mr. Gilge") told at least one of these customers that Mr. Riley was no longer employed by Remodelers.

**ANSWER:**     Defendant denies each and every allegation contained in Paragraph 22.

23.    Around the time that Mr. Riley was in this second session of training, Remodelers hired approximately 6 more Sales Representatives.  Only one of these 6 new hires was African-American.  On information and belief, Remodelers withheld the paycheck of the African-American new hire's training pay for three weeks after his scheduled pay day.  On information and belief, that individual has since left his employment with Remodelers.

**ANSWER:**    Defendant denies each and every allegation contained in Paragraph 23.

24.    On November 16, 2007, Mr. Gilge approved a two week leave of absence that Mr. Riley requested.  Mr. Gilge and Mr. Riley spoke in person and Mr. Gilge encouraged Mr. Riley that Mr. Riley would come back from the leave of absence and become the top salesman of the office.

**ANSWER:**    Defendant denies each and every allegation contained in Paragraph 24.

25.    On November 19, 2007, after finding out that Mr. Riley had filed a second charge with the IDHR, Mr. Gross sent Mr. Riley an email purporting to terminate Mr. Riley's employment with Remodelers effective November 16, 2007.  Ex. C hereto.

**ANSWER:**    Defendant admits that Mr. Gross e-mailed Mr. Riley to inform him that he was terminated, effective November 16, 2007.  Defendant denies each and every remaining allegation contained in Paragraph 25.

26.    Also on November 19, 2007, Mr. Gilge sent an email reminder to Mr. Riley regarding the start time of a sales meeting on November 20, 2007.  Ex. D hereto.

**ANSWER:**    Defendant admits to the allegation contained in Paragraph 26.

27.    On November 20, 2007, Mr. Gross sent an email to Mr. Riley asserting that Remodelers "has attempted to negotiate a resolution of matters with you in good faith" and accusing Mr. Riley of "not respond[ing] in kind."  Ex. E hereto.  Mr. Gross further accused Mr. Riley of lacking good faith and "attempt[ing] to misconstrue our discussions regarding a possible resolution of complaints and other issues."  *Id.*

**ANSWER:**    Defendant admits that on November 20, 2007, Mr. Gross sent Mr. Riley the e-mail referred to as Exhibit E in Paragraph 27, and this document speaks for itself.  Defendant denies each and every remaining allegation contained in Paragraph 27.

## COUNT I
## 42 U.S.C. § 1981 – Retaliation

28.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 27 above as though fully set forth herein.

**ANSWER:**    Defendant incorporates each and every answer contained in Paragraphs 1 through 27, inclusive, as and for its answer as though fully set forth herein.

29.    Mr. Riley filed charges with the IDHR on September 26, 2007.  This was statutorily-protected conduct.

**ANSWER:**    Defendant admits that Plaintiff filed a single charge with the IDHR on September 26, 2007.  Defendant denies each and every remaining allegation contained in Paragraph 29.

30.    On November 2, 2007, Mr. Gross demanded that Mr. Riley drop his IDHR charge and promised to pay Mr. Riley sales commissions that Mr. Gross admitted had been erroneously withheld form Mr. Riley, and an additional $3,000 for withdrawing the September 26, 2007 charge.  Mr. Riley refused to give into this demand and filed a second charge for retaliation, among other things, with the IDHR on November 5, 2007.  This, too, was statutorily-protected conduct.

**ANSWER:**    Defendant admits that Mr. Riley filed a charge with the IDHR on November 5, 2007.  Defendant denies each and every remaining allegation contained in Paragraph 30.

31.    Mr. Riley's employment was terminated by Remodelers effective November 16, 2007, less than two weeks after Mr. Riley's refusal to comply with Mr. Gross's demand and the filing of his second IDHR charge.

**ANSWER:**    Defendant admits that Mr. Riley's employment was terminated effective November 16, 2007.  Defendant denies each and every remaining allegation contained in Paragraph 31.

32.     Mr. Riley was terminated by Remodelers in retaliation for engaging in the statutorily-protected conduct of filing the charge with the IDHR.

**ANSWER:**     Defendant denies each and every allegation contained in Paragraph 32.

33.     As a result of Remodelers' retaliatory discharge of Mr. Riley, in violation of 42 U.S.C. § 1981, Mr. Riley was suffered financial harm and endured emotional distress.

**ANSWER:**     Defendant denies each and every allegation contained in Paragraph 33.

**COUNT II**
**42 U.S.C. § 1981 – Discrimination**

34.     Plaintiff repeats and alleges the allegations in paragraphs 1 through 33 above as though full set forth herein.

**ANSWER:**     Defendant incorporates each and every answer contained in Paragraphs 1 through 33, inclusive, as and for its answer as though fully set forth herein.

35.     Mr. Riley is African-American.

**ANSWER:**     Defendant admits to the allegation contained in Paragraph 35.

36.     Mr. Riley satisfactorily performed his work for Remodelers.

**ANSWER:**     Defendant denies each and every allegation contained in Paragraph 36.

37.     Mr. Riley was given sales lends further away from his home and in less lucrative areas than the other Sales Representatives, who are not African-American.

**ANSWER:**     Defendant denies each and every allegation contained in Paragraph 37.

38.     On information and belief, Mr. Riley was disciplined for missing sales meetings while other Sales Representatives, who are not African-American, frequently missed sales meetings and were not disciplined.

**ANSWER:**     Defendant admits that Mr. Riley was disciplined for missing sales meetings.  Defendant denies each and every remaining allegation contained in Paragraph 38.

39.     On information and belief, Mr. Riley was disciplined for not visiting sales leads to make a sales presentation, while other Sales Representatives, who are not African-American, missed sales leads and were not disciplined.

**ANSWER:**     Defendant admits that Mr. Riley was disciplined for not visiting his sales leads.  Defendant denies each and every remaining allegation contained in Paragraph 39.

40.     On information and belief, Mr. Riley received 2% commission under the pretext that he undersold kitchen projects, while other Sales Representatives, who are not African-American, undersold kitchen projects but received the full 9% commission.

**ANSWER:**     Defendant denies each and every allegation contained in Paragraph 40.

41.     Mr. Riley was called a racially derogatory name by Mr. Grace at an October, 2007 sales meeting.

**ANSWER:**     Defendant denies each and every allegation contained in Paragraph 41.

42.     Mr. Riley's paycheck for his initial training with Remodelers was withheld for three weeks after his scheduled pay day.  On information and belief, Remodelers also withheld for three weeks the training paycheck of another African-American Sales Representative employed by Remodelers' Mount Prospect office between August, 2007 and November, 2007. On information and belief, Remodelers, did not withhold paychecks of other Sales Representatives, who were not African-American, for three weeks.

**ANSWER:**     Defendant denies each and every allegation contained in Paragraph 42.

43.     After approximately three months of enduring this harassment, discriminatory discipline, and discriminatory treatment, Mr. Riley's employment was terminated.

**ANSWER:**     Defendant denies each and every allegation contained in Paragraph 43.

44.     As a result of Remodelers' retaliatory discharge of Mr. Riley, in violation of 42 U.S.C. §1981, Mr. Riley has suffered financial harm and endured emotional distress.

**ANSWER:**     Defendant denies each and every allegation contained in Paragraph 44.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails, in whole or in part, to state claims upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's Complaint must be dismissed to the extent that he has failed (a) to satisfy statutory prerequisites to suit and (b) to bring the present action within the applicable statutes of limitation.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent that he has failed to mitigate his damages.

## FOURTH AFFIRMATIVE DEFENSE

Even if Plaintiff could state a claim for relief in this action, Plaintiff cannot prove actual, punitive, or liquidated damages, and hence can only recover nominal damages.

## FIFTH AFFIRMATIVE DEFENSE

Each of Plaintiff's claims of retaliation should be dismissed because Defendant's actions toward Plaintiff were, at all times, based upon reasonable, legitimate, lawful and non-retaliatory reasons.

## SIXTH AFFIRMATIVE DEFENSE

Each of Plaintiff's claims of discrimination should be dismissed because Defendant's actions toward Plaintiff were, at all times, based upon legitimate, lawful and non-discriminatory reasons.

## SEVENTH AFFIRMATIVE DEFENSE

Defendant exercised reasonable care to prevent and correct promptly any discriminatory or harassing behavior alleged by Plaintiff, and/or Plaintiff unreasonably failed to take advantage of the preventative and corrective opportunities provided by Defendant or to otherwise avoid

harm.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails because to the extent that Plaintiff did avail himself of preventative and corrective opportunities, Defendant fulfilled its obligations to prevent and correct any wrongdoing.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to recover punitive damages under Section 1981 because all actions taken by Defendant concerning Plaintiff were taken in good faith.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's claim fails because he did have a good faith basis for filing this action.

## ELEVENTH AFFIRMATIVE DEFENSE

An excessive punitive damages award would violate Defendant's rights under the United States Constitution, including rights secured under the due process, equal protection and takings clauses.   In addition, an award of punitive damages premised upon net worth data has the effect of treating classes of citizens unequally in violation of Defendant's rights under the Fifth and Fourteenth Amendments to the United States Constitution.

## TWELFTH AFFIRMATIVE DEFENSE

Any award of punitive damages without bifurcating the trial of all punitive damages would violate Defendant's due process rights guaranteed by the Unites States Constitution.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are subject to the doctrine of after-acquired evidence and as such, any remedy or recovery to which Plaintiff might have been entitled must be denied or reduced accordingly.

## FOURTEENTH AFFIRMATIVE DEFENSE

Defendant cannot be held vicariously liable for alleged discrimination or retaliation or other actions which are contrary to Defendant's express policies, procedures and good faith efforts to comply with applicable laws.

## FIFTEENTH AFFIRMATIVE DEFENSE

Defendant is not vicariously liable for any alleged misconduct, discrimination or retaliation by an employee where such misconduct occurred outside the scope of his or her employment.

## SIXTEENTH AFFIRMATIVE DEFENSE

Defendant reserves the right to assert additional affirmative defenses as established by the facts of this case. Defendant will rely upon each and every defense that may become known during the course of this litigation, including discovery, trial, or otherwise.

WHEREFORE, Defendant, U.S. Remodelers, Inc. respectfully requests that this Court dismiss Plaintiff's First Amended Complaint in its entirety and with prejudice and that this Court grant Defendant any further relief it deems appropriate.

Respectfully submitted,

U.S. REMODELERS, INC.

/s/ Syeda H. Maghrabi
One of Its Attorneys

Adam C. Wit (Attorney No. 06230538)
Syeda H. Maghrabi (Attorney No. 6290109)
LITTLER MENDELSON
A Professional Corporation
200 N. LaSalle Street
Suite 2900
Chicago, IL  60601
312.372.5520


Dated: this 28 day of August, 2008

<u>**CERTIFICATE OF SERVICE**</u>

I, **Syeda H. Maghrabi**, an attorney, certify that on **August 28, 2008**, I electronically filed **Defendant's Answer And Affirmative Defenses To Plaintiff's First Amended Complaint** using the Court's CM/ECF system.  Notification of this filing will be sent electronically from the Clerk of the Court to the following parties of record:

Bettina Getz
Catherine L. Doyle
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606

/s/ Syeda H. Maghrabi

Firmwide:86041905.1 058012.1002

-15-